IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDDY RIVERA, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | No. 08-1971 |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | : | |
| Defendant. | : | |

**MEMORANDUM RE: SOCIAL SECURITY APPEAL**

**Baylson, J.**                                                                                          **January 29, 2009**

      Plaintiff, Freddy Rivera, seeks judicial review of the decision by the Commissioner of the Social Security Administration ("Defendant") denying his application for Social Security Disability Income ("SSDI") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-83(c)(2000). For the reasons described below, the Court will affirm the decision of the ALJ and deny Plaintiff's request for benefits or a new hearing.

**I.     Background and Procedural History**

      On June 6, 2005, Plaintiff filed an application for SSDI and SSI benefits under Titles II and XVI respectively of the Social Security Act. (R. 43-46). Plaintiff's application complains that, as of September 2003, he is limited in his ability to work because he suffers from diabetes, swollen legs, high cholesterol and liver problems. (R. 53-54). The application was initially denied on August 15, 2005 after the Administration determined that his condition was not severe enough to warrant benefits, (R. 29-32), and Plaintiff filed a timely request for a hearing before an

Administrative Law Judge ("ALJ") on October 13, 2005, (R. 33).

The hearing before the ALJ, Judge Irving A. Pianin, occurred on April 23, 2007. (R. 178-202). On May 10, 2007, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act and denying Plaintiff all benefits. (R. 13-23). The ALJ concluded that Plaintiff suffered from severe impairments, including obesity, renal failure, diabetes mellitus, hypertension, and left leg diverticulitis, and could not perform his past work as a pizza maker. (Id.). However, the ALJ also found that there were other jobs in the national economy that Plaintiff could perform despite his limitations and thus did not consider Plaintiff disabled under the Act. (Id.). Plaintiff timely filed a request for review of the ALJ's decision on September 5, 2007. (R. 12). On February 20, 2008 the Appeals Council denied Plaintiff's request for review, affirming the decision of the ALJ. (R. 5-7). Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), Plaintiff then filed the instant action, requesting this Court reverse the Commissioner's decision and award benefits, or in the alternative, remand the case for further consideration. (Docs. Nos. 2, 12).

## II.   Legal Standards

### A.   Jurisdiction

The Social Security Act provides for judicial review by this Court of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g) (2000).

### B.   Standard of Review

On judicial review of the Commissioner's decision, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Id. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . .

. .'" Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003)).  In reviewing the record for substantial evidence, however, this Court must "not 'weigh the evidence or substitute [its own] conclusions for those of the fact finder.'" Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)).  This Court's review of the legal standards applied by the ALJ is plenary.  See Allen v. Barnhart, 417 F.3d 396, 398 (3d Cir. 2005).

  **C.**  **Disability Claims Analysis**

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner of the Social Security Administration has promulgated regulations requiring a five-step analysis to determine the eligibility of claimants for benefits.  First, if the claimant is engaged in substantial gainful activity, the claim must be denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claim must be denied unless the claimant is suffering from a severe impairment or combination of impairments that significantly limits physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant's severe impairment(s) meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claim is approved.  20 C.F.R. §§ 404.1520(d), 416.920(d).

  Fourth, if the claim is not approved under Step 3, the claim will be denied if the claimant retains the residual functional capacity ("RCF") to meet the physical and mental demands of his or her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  Finally, if the claimant

does not retain the RFC to perform past relevant work and there is no other work in the national economy that the claimant can perform, considering his or her RFC, age, education, and past relevant work experience, then the claim will be approved. 20 C.F.R. §§ 404.1520(g), 416.920(g).

### III. Discussion

Plaintiff argues that the ALJ made several errors in his application of the analysis for disability claims, including: (1) rejection of Plaintiff's treating orthopedist's well-supported opinion; (2) failure to discuss the impact of Plaintiff's use of a cane on the ability of Plaintiff to perform work in Steps 4 and 5 of the analysis; (3) failure to find Plaintiff's diabetic neuropathy and sleep apnea as medically-determinable impairments in Step 2 of the analysis; and (4) reliance on an incomplete hypothetical question to the vocational expert.

#### A. ALJ's Consideration of Plaintiff's Treating Physician's Opinion

Plaintiff first contends that the ALJ erred by rejecting the opinion of Plaintiff's treating orthopedist, Dr. Anain, and failing to give it proper weight in the analysis. That opinion concluded that Plaintiff could only occasionally lift or carry very little weight, under ten pounds, and could stand or walk less than two hours in an eight-hour work day. (R. 167-69). Dr. Anain also found that Plaintiff could sit less than six hours in an eight-hour work day, that Plaintiff's ability to push or pull was limited in both his upper and lower extremities, and that Plaintiff's ability to manipulate items using his hands was limited to only occasional performances. (Id.)

Plaintiff asserts that because the orthopedist's opinion was not contradicted by other substantial evidence and was well-supported by acceptable clinical and laboratory diagnostic techniques, it was entitled to controlling weight. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)

(discussing weight given to opinions of treating physicians). The Third Circuit has held that "ALJ may not simply ignore the opinion of a competent, informed, treating physician." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986). Such an opinion cannot be rejected where there is no contrary medical evidence. Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); see also SSR 96-2p, 61 Fed. Reg. 34490, 34490-92 (July 2, 1996) (explaining that a "well-supported" medical opinion only requires reasonable support for the opinion and that a treating physician's opinion "need not be supported by all of the other evidence . . . as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion"). Notably, it is an error of law to reject the treating physician's opinion without an adequate explanation. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

However, in the instant case the ALJ found Dr. Anain's opinion was "inconsistent with the clinical signs and medical finding contained in the record . . [and] the findings of Dr. Buschiazzo, an examining source." (R. 21). The ALJ further noted that Dr. Anain did not provide substantial support for his assessment, even though the Social Security form required him to do so. (Id.) Indeed, Dr. Anain's conclusions are contained solely on a standard medical assessment form with check-marks indicating Plaintiff's condition; his assessment does not included any narrative explaining the basis for his medical conclusions on the form. (R. 167-70). This is particularly troubling given Dr. Anain was a treating physician who examined Plaintiff and had the opportunity to become more intimately acquainted with Plaintiff's condition, which Dr. Anain could have elaborated on in a narrative statement.

In contrast to Dr. Anain's opinion, the consulting physician, Dr. Buschiazzo, examined Plaintiff and found normal range of motion in all areas but reduced grip strength in both hands,

absent left leg deep tendon reflexes, some left leg edema, and decreased arterial pressure.  (R. 87).  Dr. Buschiazzo opined that Plaintiff could stand or walk one hour or less in an eight-hour day but otherwise had no limitations.  (R. 89-98).  Furthermore, Dr. Buschiazzo's assessment included narrative statements and explanations for his findings.  (R. 86-87).

The ALJ also examined the records and notes of several other treating physicians, all of whom found that Plaintiff's impairment was not as severe as Dr. Anain had concluded.  First, the ALJ considered an assessment by Plaintiff's hematologist, Dr. Quien, who treated Plaintiff from October 2005 until November 2006.  (R. 102-18).  Dr. Quien treated Plaintiff for swelling in his legs, which occurred sporadically over that time.  (R. 103-13).  Plaintiff first began seeing Dr. Quien in October 2005 after an episode of swelling and pain in his lower extremity, mostly in the left calf, (R. 113), but Dr. Quien's notes do not indicate that Plaintiff has complained of any more pain since January 2006, (R. 103-108).  The ALJ further considered an assessment by Dr. Silva, Plaintiff's treating nephrologist, who treated Plaintiff from March 2006 until February 2007.  (R. 135-51).  Dr. Silva's notes indicates Plaintiff suffered from renal failure and hypertension but had a normal gait, normal pulses in his legs, and only trace edema.  (R. 135, 140, 142, 144.  (R. 146).  Only Dr. Silva's first notation, in April 2006, mentions Plaintiff's complaint of aches and pains in his legs and left hand.  (R. 146).

Finally, the ALJ considered Plaintiff's own testimony at the hearing, in which Plaintiff admitted he could lift five to ten pounds, could sit for a "pretty long time," and could stand for one hour at a time.  (R. 193).  Based on the other evidence in the record and Dr. Anain's unexplained conclusions on his assessment form, this Court finds that the ALJ did not improperly fail to give more weight to Dr. Anain's opinion.  The opinions from Dr. Buchiazzo,

Dr. Quien, and Dr. Silva and Plaintiff's own testimony did not indicate that Plaintiff's impairments were as severe or as limiting as Dr. Anain had assessed. Where there is inconsistent medical evidence, the ALJ is not required to give greater weight to a treating physician. Furthermore, while the ALJ did not provide a detailed explanation why he did not give Dr. Anain's opinion more weight, the ALJ did note that Dr. Anain's opinion was inconsistent with the other evidence in the record and that Dr. Anain's conclusions lacked substantial support or explanation. Thus, the ALJ did not reject the doctor's opinion without an adequate explanation.

In addition, though the ALJ was not required to give significant weight to Dr. Anain's opinion in these circumstances, the ALJ does appear to have given some consideration to Dr. Anain's more restrictive assessment, as the ALJ ultimately questioned the vocational expert on the availability of jobs that demanded less physical work than what Dr. Buschiazzo had determined Plaintiff was capable of performing. In his written opinion, the ALJ noted that "the undersigned finds that the medical evidence supports a greater degree of limitation" than Dr. Buschiazzo found, and thus "Dr. Buschiazzo's opinion has been given the appropriate weight." Given the evidence in the record, this Court cannot find that the ALJ's conclusion about the type of work Plaintiff could perform lacked substantial evidence or that the weight given to each medical opinion in rendering that conclusion was improper.

   B.  <u>ALJ's Consideration of Plaintiff's Use of a Cane</u>

Plaintiff next contends that the ALJ erred in failing to incorporate Plaintiff's cane use in the ALJ's determination of Plaintiff's residual functional capacity. Plaintiff points out that the ALJ considered Plaintiff's cane use when assessing whether Plaintiff's impairment required approving the claim under Step 3, but the ALJ did not mention the cane when analyzing whether

Plaintiff's RFC allowed him to perform his past relevant work or any other type of work under Steps 4 and 5 of the analysis.  (R. 19-23).  Plaintiff argues that given his medical need for a cane, the ALJ's decision that Plaintiff could perform sedentary work, which was made without specific consideration of the cane's impact, was in error.

Social Security Ruling 96-9p states that when determining whether there are jobs in the national economy that a particular claimant may perform, the adjudicator must first determine the appropriate occupational base, which is derived from the claimant's limiting impairments.  61 Fed. Reg. 34478, 34480-81 (July 2, 1996).  The ALJ in the instant case determined that Plaintiff had a sedentary occupational base, as his severe impairments restricted him to sedentary positions for a large portion of the day.  The Ruling further states that other factors may erode the occupational base, including the use of a medically required hand-held device.  Specifically, the Ruling explains,

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).  The adjudicator must always consider the particular facts of a case.  For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p, 61 Fed. Reg. at 34482.

In Howze v. Barnhart, 2002 WL 31656560, at *3 (3d Cir. 2002), the Third Circuit found that even where the medical evidence mentioned the claimant's use of a cane and a physician had indicated that the claimant needed to use a cane, such isolated notations are "insufficient to support a finding that the [claimant's] cane was medically necessary."  Thus, the ALJ in that case

properly chose not to account for the claimant's use of a cane.  Id.  Similarly, in the present case the medical evidence includes a signal treatment note from Dr. Quien prescribing a cane to assist Plaintiff in walking.  (R. 115).  No other physician mentioned the cane or the need for an assistive device.  Moreover, Plaintiff admitted that he could stand for one hour, even with the use of his cane.  (R. 19-20, 184-185).  The ALJ restricted the occupational base to sedentary work requiring no more than one hour of standing during an eight-hour work day.  In light of the scant evidence on Plaintiff's cane use and the already restricted occupational base, the Court cannot conclude that the ALJ erred in not specifically finding that the cane was medically necessary or in failing to consider the cane's impact in Step 5.

     **C.**     **ALJ's Failure to Treat Plaintiff's Diabetic Neuropathy and Sleep Apnea As Separate Impairments**

Plaintiff next asserts that the ALJ erred in Step 2 of the analysis by failing to find that Plaintiff's diabetic neuropathy and sleep apnea were severe impairments.  Plaintiff argues that because the ALJ did not make a specific finding with regard to those impairments, the ALJ did not incorporate any limitations arising from those ailments into his residual functional capacity finding in Step 4.  According to Plaintiff, the neuropathy affects his grip and manual dexterity, but most unskilled sedentary jobs–those the ALJ found Plaintiff could perform–require at least normal use of hands.  See SSR 96-9p, 61 Fed. Reg. at 34482 (explaining that bilateral manual dexterity is required for the performance of substantially all unskilled sedentary occupations).  Similarly, Plaintiff argues that the ALJ's finding of a residual functional capacity is incomplete because it failed to consider that sleep apnea can cause drowsiness and lack of mental clarity.  See SSR 02-1p, 67 Fed. Reg. 57859, 57861 (Sept. 12, 2002) (noting the effects of sleep apnea).

In Step 2, the ALJ determines whether a claimant has an impairment severe enough to significantly limit the claimant's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c). The Social Security Rulings indicate that the adjudicator should only deny a claim at that stage because the impairment is not severe if the "medical evidence establishes only a slight abnormality . . . which would have no more than a minimal effect on the individual's ability to work . . . ." SSR 85-28; see also 96-3p, 61 Fed. Reg. 34468, 34469 (July 2, 1996). Step 2 therefore serves as a screening device for groundless claims by rejecting at that stage those claims based on slight impairments that have a minimal effect on the claimant's ability to work. Newell v. Barnhart, 347 F.3d 541, 546 (3d Cir. 2003).

Contrary to Plaintiff's interpretation of the decision in Newell, the Third Circuit did not impose an obligation on the ALJ to individually assess every impairment in Step 2 and specifically find only those that had a minimal impact on an individual's ability to work were not severe. Rather, the Newell Court merely held that when considering an impairment or combination of impairments, the ALJ could only reject at this stage of the analysis those claims that were clearly groundless. Notably, the ALJ in the instant case did not reject Plaintiff's claim at Step 2 and did not make a finding that either the neuropathy or sleep apnea was not severe. In contrast, the ALJ did specifically find that the pain in Plaintiff's right leg was not severe and not medically determinable. The Newell decision does not support Plaintiff's inference that because the ALJ did not make a specific finding on the severity of two particular ailments among the many that Plaintiff presented with, the ALJ did not consider that impairment in his final analysis at Steps 4 and 5.

Furthermore, the ALJ did specifically consider the neuropathy in his assessment. The

-10-

ALJ noted that while Plaintiff suffers from some peripheral neuropathy in his upper and lower extremities, the objective medical evidence indicates that the condition is more pronounced in the lower extremities but does not reveal any "significant or persistent disorganization of motor function . . . resulting in sustained disturbance of gross and dextrous movements." (R. 19). Notably, the hearing focused on Plaintiff's pain in his leg, his obesity and diabetes, his hypertension, and his renal failure; the hearing did not discuss Plaintiff's neuropathy in his hands and when asked if he had any further complications from his conditions, Plaintiff did not mention the neuropathy. (R. 10-21, 16). The Plaintiff did not specifically mention his sleep apnea at the hearing, but he did explain that he is extremely tired and sleepy from the diabetes, and the ALJ mentioned Plaintiff's fatigue in his opinion. (R. 16, 20).

Based on the record, this Court cannot find that the ALJ erred either in failing to make a specific finding on the severity of the sleep apnea and the neuropathy or in ultimately concluding that those impairments did not impose any additional limitations when determining the Plaintiff's residual functional capacity. The ALJ was clearly aware of those medical problems and considered both in his written opinion. The ALJ then made a reasonable conclusion that those impairments do not further limit the Plaintiff's ability to work to the extent that Plaintiff now claims they do. This Court also finds that the ALJ considered all of the available medical evidence in coming to that conclusion. As the ALJ's finding that Plaintiff was able to perform sedentary work, despite the minimal impact of his slight neuropathy and his fatigue, was based on substantial evidence, the Court rejects Plaintiff's argument.

### D.     ALJ's Reliance on Testimony of Vocational Expert in Response to Incomplete Hypothetical Question

Plaintiff's final complaint concerns whether the vocational expert's testimony on available jobs that Plaintiff could perform was in response to a complete hypothetical question. Plaintiff asserts that because the ALJ failed to give proper weight to the opinion of Plaintiff's treating orthopedist and did not specifically incorporate Plaintiff's cane use, sleep apnea, or neuropathy in the hypothetical scenario posed to the vocational expert, the ALJ's instruction to the expert, and therefore the expert's opinion, was incomplete. However, as this Court has found that the ALJ did not err in its treatment of the orthopedist's assessment or in its consideration of the cane use, sleep apnea, or neuropathy, the Court similarly finds that the ALJ's instruction to the vocational expert was not improper. Given that the ALJ made a reasonable conclusion, supported by substantial evidence in the record, on the severity of Plaintiff's impairments, the ALJ properly questioned the expert only on the jobs available for someone with the impairments that the ALJ found significantly limited the Plaintiff's ability to work. Thus, the ALJ did not err in questioning or instructing the vocational expert.

### IV.     Conclusion

The Court finds that the decision of the ALJ was proper and supported by the evidence in the record. Thus the Court affirms that decision and denies Plaintiff's request for an award of benefits or a new hearing.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FREDDY RIVERA, : | |
| : | |
| Plaintiff, : | CIVIL ACTION |
| : | |
| v. : | No. 08-1971 |
| : | |
| MICHAEL J. ASTRUE, : | |
| Commissioner of Social Security, : | |
| : | |
| Defendant. : | |

**<u>ORDER</u>**

AND NOW, this 29th day of January, 2009, upon careful and independent consideration of Plaintiff Freddy Rivera's Request for Review (Doc. 12) and review of the record, it is hereby ORDERED that Judgment is entered in favor of the Commissioner, affirming the decision of the Commissioner, and against Plaintiff. The clerk shall mark this case as CLOSED for statistical purposes.

BY THE COURT:

 /s/ Michael M. Baylson
Michael M. Baylson, U.S.D.J.

O:\Lauren\Rivera v. Astrue\memo.wpd